# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| SYMANTEC CORPORATION, *et al.* | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 17-806 |
| ZSCALER, INC. | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                **July 31, 2017**

A technology company travelled approximately 2,900 miles to sue another technology company headquartered seven miles away from it in Northern California over disputed patent rights. The defendant technology company now seeks to transfer this patent case to the Northern District of California which houses both parties' witnesses and headquarters. The parties created the challenged technology outside this District. The engineers and witnesses are outside this District. The only nexus is most of the parties are incorporated here. While the companies may seek our venue as Delaware corporations, we carefully review a motion to transfer when one of the Delaware corporations argues transfer to the parties' principal place of business will serve the interests of the parties and Federal Rule of Civil Procedure 1. Upon applying our court of appeals' well-settled factors guiding transfer for convenience when venue is appropriate here, we find the majority of the factors weigh in favor of transfer. We enter the accompanying Order granting the Defendant's motion to transfer to the Northern District of California.

I.  **Facts**

Symantec Corporation and Symantec Limited (together "Symantec") offer network security products.[1] "[R]elative newcomer" Zscaler also offers products in the network security market.[2] Symantec sues Zscaler alleging its cloud-based security technology infringed on seven of Symantec's patents.[3] Zscaler now seeks to transfer venue to the Northern District of California.

Symantec Corporation is incorporated in Delaware with its principal place of business in Mountain View, California and Symantec Limited is organized in Ireland and its principal place of business is in Dublin, Ireland.[4] Symantec sells its products around the world, employs more than 11,000 people around the world, and has revenues of $ 4 billion dollars in 2017.[5] Symantec does not have officers in Delaware.[6]

Zscaler is incorporated in Delaware with its principal of business in San Jose, California.[7] 238 of Zscaler's 793 employees work in San Jose, California including 106 of 110 of engineers and technical staff who work on allegedly infringing cloud-based security technology.[8] Zscaler has no employees or offices in Delaware.[9] Zscaler's employee, Dr. Sinha, declares "[s]ubstantially all of the research, software coding, and development" including the design and creation of the allegedly infringing technology is done in San Jose, California and India.[10] Zscaler also declares its 2017 revenues "were a fraction of $4 billion" but does not enlighten us to how large or small of a fraction.[11] Over 15 million consumers around the world use Zscaler's products.[12]

Zscaler's counsel, Attorney Heaps, also declares the named inventors of the seven patents Zscaler allegedly infringes are not in Delaware: three are in California, three in Utah, one in Texas, Massachusetts, Canada, Singapore, and the rest have an unknown location.

II.  Analysis

Zscaler moves to transfer venue to the Northern District of California. Venue is proper in this District and Symantec does not dispute venue is also proper in the Northern District of California where both parties have their principal place of business. We may transfer venue under 28 U.S.C. § 1404(a) if we find it appropriate "[f]or the convenience of parties and witnesses, in the interests of justice." Because we do not "lightly disturb" Symantec's choice of venue, Zscaler bears the burden of establishing venue in the Northern District of California better serves the interests of justice and is the more convenient venue.[13]

Our court of appeals described the relevant private and public interests we consider together and use our discretion to determine whether a 1404(a) transfer is appropriate.[14]

A.  *Jumara* **private interest factors weigh in favor of transfer.**

The private interest factors weigh in favor of transfer.

1.  **Symantec's forum of preference.**

While we accord deference to Symantec's choice, "[w]hen a plaintiff brings its charges in a venue that is not its home forum ... that choice of forum is entitled to less deference."[15] In *Memory Integrity, LLC v. Intel Corporation*, the plaintiff corporation organized under Delaware law with a principal place of business in Delaware but had no actual employees, facilities, or operations here. It sued another corporation organized under Delaware law but with a principal place of business in Oregon.[16] The court granted defendant's motion to transfer venue and gave the plaintiff's forum preference minimal weight against transfer "conclude[ing] [plaintiff] cannot reap the full benefits of heightened deference as a result of its minimal connection to Delaware."[17] As a *Memory Integrity*, both Symantec and Zscaler are Delaware corporations and

3

Symantec does not have facilities, employees, or operations here. Symantec's preference for Delaware weighs minimally against transferring venue.

Zscaler also argues Symantec's previous attempts to transfer venue from this District to the Northern District of California also weigh against Symantec's preference. Symantec's litigation strategy in other cases is not relevant to our "individualized, case-by-case consideration of convenience and fairness."[18]

### 2. Zscaler's forum preference.

Zscaler prefers to litigate in the Northern District of California where both Zscaler and Symantec have their principal places of businesses. In fact, Symantec and Zscaler's headquarters are seven miles apart in the Northern District of California.[19] Zscaler's preference weighs in favor of transferring venue but we accord its preference less weight than Symantec's preference.[20]

### 3. Whether the claim arose elsewhere.

Under 35 U.S.C. § 271(a), Symantec's claims arose "wherever someone has committed acts of infringement" but courts hold "infringement claims, however, have even deeper roots in the forum where the accused products were developed."[21] Zscaler, as an international company, sells its allegedly infringing products to customers in Delaware so claims do arise here. Importantly, Zscaler declares, and Symantec does not dispute, "substantially all of the research, software coding and development," as well as the design and creation of the allegedly infringing technology took place in San Jose, California or India.[22] This factor weighs in favor of transfer because Symantec's claims have "deeper roots" in the Northern District of California where Zscaler designed and created the allegedly infringing technology.

4

### 4. The convenience of the parties.

We consider the "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal."[23]

As Delaware corporations, we note "the inconvenience of litigating here is somewhat less than the court would ordinarily presume it to be" but the fact parties both have their principal places of business in the Northern District of California makes it weigh in favor of transfer.[24] The associated logistical and operational costs for employees to travel to Delaware would be complicated and more expensive than from their principal places of business within the Northern District of California to the San Jose courthouse.

The final factor is neutral because both corporations are large international corporations able to bear the costs of litigation. This is not a David and Goliath situation. While Zscaler declares it makes a "fraction" of Symantec's $4 billion dollar revenue in 2017, that fraction could be three-fourths or $3 billion dollars. Overall, this factor weighs in favor of transfer.

### 5. The convenience of the witnesses.

We consider the convenience of the witnesses "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora."[25] In this factor we do not consider witnesses employed by the parties but necessary third party witnesses outside the parties' control.[26]

Zscaler argues this factor weighs in favor of transfer because none of the twenty-four inventors of the patents-in-suit reside in Delaware and at least three inventors reside in California. Symantec argues Zscaler does not show any of these witnesses would not attend

5

trial. We do not "require such a clear statement—it is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe that those witnesses will refuse to testify absent subpoena power."[27] Zscaler's counsel acknowledges in his declaration Symantec informed him Symantec either already or intends to represent all the inventors unless they choose otherwise except the inventor currently employed by Zscaler.[28] Where plaintiff is representing or intending to represent the inventors we have no reason to believe the inventors "will refuse to testify absent subpoena power."[29] This factor is neutral.

### 6. The location of books and records.

We consider the location of books and records "limited to the extent that the files could not be produced in the alternative forum."[30] In infringement cases, the "'bulk of relevant evidence' using comes from the accused infringer, such that the location of the [accused infringer's] documents can favor transfer."[31] While technology reduced the importance of this factor, the Federal Circuit cautioned "it is improper to ignore them entirely."[32]

Zscaler designed and developed the allegedly infringing technology in San Jose, California and India and its principal place of business is in San Jose so "it is reasonable to presume that much of the evidence will be found there."[33] This factor weighs minimally in favor of transfer.

## B. *Jumara* public interest factors weigh in favor of transfer.[34]

The public interest factors weigh in favor of transfer.

### 1. The enforceability of the judgment.

The parties do not address this issue because a judgment in this District and the Northern District of California are equally enforceable so this factor is neutral.

### 2. Practical considerations for trial.

6

We consider "practical consideration that could make trial easy, expeditious, or inexpensive."[35] Because both parties have their principal places of business and the bulk of their employees in the Northern District of California, we can fairly assume trial would be more inexpensive there. Symantec argues this factor is not important because it is "speculative at best" to assume a trial will happen. This type of speculation lacks merit. We expect all cases will try.

This factor weighs in favor of transfer because trial would be easier and less expensive in the Northern District of California but we do not accord this factor extraordinary weight bearing in mind Zscaler's choice to incorporate in Delaware. We note Symantec Corporation is listed as a plaintiff on 21 cases on the Northern District of California's PACER docket meaning Symantec is familiar with the District and is comfortable litigating in its principal place of business.[36]

### 3. The relative administrative difficulty in the two fora resulting from court congestion.

While neither party addresses this factor, we do because this District is now reduced to two active district court judges with judges from other busy districts sitting as visiting judges to help relieve the congestion until new district court judges are confirmed. The Northern District of California has a full quorum of district court judges who are also experienced in patent litigation. As of the March 31, 2017 Reporting Period, 6.2% in the docket of the Northern District of California is over three years old compared to 13.4% in this District.[37] While both Districts are busy and known for their patent experience, this District is ranked 17th in the United States for weighted filings per judge (based on four judges as of March 31, 2017) while the Northern District of California is ranked 23rd based on fourteen judges as of March 31, 2017. This District is now reduced to two active judges, only increasing the number of cases on each judge's docket here. While visiting judges can assist, we also must manage our busy urban

7

dockets and, as much as we may try, cannot fully mitigate the loss of experienced judges in this District while we await commissions for new district court judges. This factor weighs in favor of transfer.

### 4. The local interest in deciding local controversies at home.

"This factor is typically neutral in the context of patent litigation, as 'patent issues do not give rise to a local controversy or implicate local interests.'"[38] Symantec brings only federal patent law claims and we find this factor neutral.

### 5. The public policies of the fora.

This factor is neutral because Symantec brings federal patent claims which are the same in this District and the Northern District of California.

## III. Conclusion

In the accompanying Order, we grant Zscaler's motion to transfer venue under § 1404(a) because, after a fact specific review of the *Jumara* private and public interest factors, the balance of the factors weigh decidedly in favor of transfer.

---

[1] Complaint, ECF Doc. No. 1, ¶ 17.

[2] ECF Doc. No. 1, ¶ 20.

[3] *Id.*, ¶¶ 8-15. Symantec earlier sued Zscaler in this District alleging it infringed on another seven of its patents. *Symantec Corp. v. Zscaler, Inc.*, No. 16-1176. Zscaler's motion to transfer venue and motion to dismiss in this arguably related case are pending before Judge Fallon.

[4] *Id.*, ¶¶ 2-3.

[5] Declaration of Bailey W. Heaps, ECF Doc. No. 8, ¶¶ 3-4.

[6] *Id*, ¶ 5.

[7] ECF Doc. No. 1, ¶ 1.

8

[8] Declaration of Amit Sinha, ECF Doc. No. 9, ¶¶ 4-5.

[9] *Id.*

[10] *Id.,* ¶¶ 7-8.

[11] *Id,.* ¶ 11.

[12] ECF Doc. No. 12-1, at 2.

[13] *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

[14] *See id.*

[15] *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, No. 16-733, 2017 WL 1536394, at *3 (D. Del. Apr. 27, 2017) (quoting *In re Link_A_Media*, 662 F.3d at 1221, 1223 (Fed. Cir. 2011)).

[16] *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804, 2015 WL 632026 at *3 (D. Del. Feb. 13, 2015).

[17] *Id.*

[18] *Id.* (quoting *In re Genetech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)).

[19] ECF Doc. No. 8, ¶ 2.

[20] *Memory Integrity*, 2015 WL 632026 at * 3 (citing *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012)).

[21] *Id.* (citing *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012).

[22] ECF Doc. No. 9, ¶ 8.

[23] *Memory Integrity*, 2015 WL 632026, at *4 (quoting *Smart Audio Techs., L.L.C. v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012) (internal citation omitted)).

[24] *See Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*, No. 14-1142, 2015 WL 4624164, at *5 (D. Del. July 31, 2015).

[25] *Id.* (quoting *Jumara*, 55 F.3d at 879).

[26] *See Audatex North America, Inc. v. Mitchell International, Inc.*, No.12-139, 2013 WL 3293611 at *5 (D. Del. June 29, 2013).

[27] *Id.*

[28] ECF Doc. No. 8, ¶ 7.

[29] *See Audatex*, 2013 WL 3293611 at *5.

[30] *Id.* at 6 (quoting *Jumara*, 55 F.3d at 879).

[31] *Id.*

[32] *In re Link_A_Media*, 662 F.3d at 1223.

[33] *See Audatex*, 2013 WL 3293611 at *6.

[34] We do not address the 6th *Jumara* factor, the familiarity of the trial judge with the applicable state law in diversity cases because this case only has federal patent law claims.

[35] *Smart Audio*, 910 F. Supp. 2d at 732.

[36] Zscaler appears to have brought one case in the Northern District of California, as well.

[37] United States District Court—National Judicial Caseload Profile, Reporting Period March 31, 2017, http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2017.pdf (last visited July 31, 2017).

[38] *Id. at* 733 (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008)).